In the Matter of the Judicial Settlement of the Accounts of ANDREW
    DRISKEL, as Executor, etc., of FREDERICKA DRISKEL, Deceased.

In the Matter of the Estate of ANTHONY MUSCHALL, Deceased.

ANDREW DRISKEL, as Executor, etc., of FREDERICKA DRISKEL,
    Deceased, Appellant; ANTOINETTE KNICKENBERG, as Admin-
    istratrix de Bonis Non of ANTHONY MUSCHALL, Deceased,
    Respondent.

*Will — gift of $5,000 to the testator's children to be paid after the wife's death, who
    is given the use and benefit thereof for life — interests of the wife and children
    determined.*

Where a testator, by his will, provides: "*First.* I give, devise and bequeath to
    my children the sum of Five thousand dollars, to be equally divided between
    them, share and share alike, and to be paid to them by my executor hereinafter
    named, after the decease of my beloved wife, Fredericka Muschall, who shall
    have the use and benefit of said amount for and during the term of her natural
    life for the better maintenance and support of my said children, and it shall be
    the duty of my wife to support my children with the profits of said money, and
    the property bequeathed to her by this will," and then bequeaths all the
    remainder of his estate to his wife, the wife, who, upon the death of the execu-
    tor nominated in the will, was appointed administratrix with the will annexed
    and received possession of the entire estate, is not entitled to use any part of
    the principal of the $5,000 fund, but only the income thereof.

The income of the $5,000 fund, as well as the principal thereof, belongs to the
    children from the moment of the widow's death, and if such fund is retained
    as part of the widow's estate, the children are entitled to recover the same
    with interest.

APPEAL by Andrew Driskel, as executor, etc., of Fredericka
Driskel, deceased, from a decree of the Surrogate's Court of the
county of Erie, entered in said Surrogate's Court on the 4th day of
March, 1904, confirming the report of a referee appointed to exam-
ine the accounts of the said executor.

*Philip A. Laing* and *John F. Mueller*, for the appellant.

*Moses Shire, Cecil B. Wiener* and *Vernon Cole*, for the
respondent.

WILLIAMS, J. :

The decree should be affirmed, with costs.

It directed the executor of the Driskel estate to pay to the admin-

istratrix of the Muschall estate the amount of a legacy under the Muschall will of $5,000, with interest and costs, on the ground that the amount of this legacy came into the hands of Mrs. Driskel and was in her custody at the time of her death. The deceased, Muschall, died August 6, 1872, leaving a widow and five children, of whom the administratrix herein was one. The children were from two to nine years of age at that time. He left a will, the three provisions of which were as follows:

"*First.* I give, devise and bequeath to my children the sum of Five thousand dollars, to be equally divided between them, share and share alike, and to be paid to them by my executor hereinafter named, after the decease of my beloved wife, Fredericka Muschall, who shall have the use and benefit of said amount for and during the term of her natural life for the better maintenance and support of my said children, and it shall be the duty of my wife to support my children with the profits of said money, and the property bequeathed to her by this will.

"*Second.* All the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath to my beloved wife, Fredericka Muschall, to have and to hold the same to herself, her heirs and assigns forever.

"*Third.* I hereby appoint my trusty friend, Augustus Paul, sole executor of this my last will and testament, and guardian over my said children, with power to pay to any of my said children his or her share of the five thousand dollars aforesaid, after they shall have attained the age of twenty-one years, or at any other time at the written request and with the consent of my said beloved wife."

He left real estate worth about $8,000, and personal property worth about $9,000. This property consisted mainly of a brewery building and the appliances for carrying on the brewery business, and beer and materials for the manufacture of beer on hand. It was claimed also that the capacity of the brewery was 3,000 barrels per year, and that the good will of the business was $15,000, and the indebtedness of the estate was only $500, aside from some indebtedness for malt then on hand. The executor named in the will was duly appointed and qualified, but before he had administered the estate he died. Thereupon the widow was appointed administratrix with the will annexed, and took possession of the

property of the estate. No inventory was filed by either the executor or the administratrix, and no account was ever made by either to the Surrogate's Court. The widow went on with the business, conducting it herself from the time of her husband's death until the early part of 1874. Then she married Andrew Driskel and he came into the brewery and took the general management of the business and conducted it in his wife's name until the year 1885. Then, owing to changed conditions in beer manufacture, the brewery business became unprofitable and was closed out. The machinery and stock on hand were sold and the brewery building was converted into a residence, which the family occupied until June, 1894. Then Mrs. Driskel died, leaving a will under which she made her husband executor and guardian of her minor children. By this will she gave her husband a life use of the brewery, residence building, he to keep same in repair and pay taxes and insurance, and after his death the same to go to her children, share and share alike. She also gave her husband the income during life of a bond or bonds of the St. Louis Roman Catholic Church of Buffalo, the bond or bonds after his death to be divided equally among her children. And then she gave all the balance of her estate to her husband absolutely. This will also contained the following provision : " I order and charge my said husband, that when one of my children from my first husband, Muschall, deceased, shall marry during his lifetime, he shall pay to her the sum of One thousand (1,000) dollars which is a legacy of their deceased father, and must be paid to every one of them besides their equal shares with my other children." This will was made in March, 1890, and after the death of the testatrix was admitted to probate and Driskel, the husband, was appointed executor and entered upon the duties of the office. He made no inventory of the estate and never had any accounting before the surrogate until the present one, commenced in April, 1902, seven years after the testatrix's death. She left the real property described in her will and one $500 bond of the St. Louis Roman Catholic Church, also referred to in the will; $500 in cash on deposit in the Buffalo Savings Bank; $1,500 of household furniture. There was also real property in the name of herself and husband of the value of $15,600, and mortgages to the amount of $5,300, running to both husband and wife. This real

property and these mortgages were investments made more or less from moneys and property left by her first husband, Muschall; certainly from moneys so realized and from the carrying on of the brewery business. This decree appealed from was based upon the facts we have stated, the most of which are not controverted. Some question is made as to the brewery equipment, and the beer and personal property left by Muschall at his death, and the value thereof, but the referee heard the evidence and the arguments of counsel, and after considering the matter found the facts as we have stated them, and inasmuch as Mrs. Muschall failed to file any inventory or have any appraisal of the property, we do not feel inclined to differ with the referee and the surrogate as to the facts as found.

Question is also made as to the findings of the referee with reference to the mortgages and real estate standing in the name of Mr. and Mrs. Driskel after her death, and the moneys and property that went into and paid for them. Here again we are not inclined to differ with the referee and the surrogate as to the findings of fact. The executor allowed seven years to elapse without filing any inventory or appraisal showing what property his wife left and what it was worth. He made no effort to account before the surrogate or provide for the payment of these legacies which he was expressly charged to pay in the will of his deceased wife, the mother of these children. When he finally undertook to account, he exhibited but little honesty with regard thereto. The referee heard the witnesses and counsel, and after examining the matter carefully made these findings, and we see no reason why we should interfere with them. Muschall died leaving his wife and five young children. He gave his wife all his property, except a legacy of $5,000 to his children. He gave his wife the use or income from this legacy during his life, only requiring the principal of the fund to be paid to the children at her death. She was required by the will to maintain and support the children from the income from the $5,000 and from the whole balance of the estate which was given to her. She received all this property, and it was her duty then to set apart the $5,000 for the children. She had no right to use the principal, but only the interest. She accepted the property and with it the trust for the benefit of these children under the will, and when she came to die she, by her will, charged her husband to pay this legacy

from her property before any distribution thereof was made among her other children. She left enough property to pay the legacy. She made it a charge upon such property. Why should it not be paid? The husband, this executor, went into this family a year and a half after the husband and father, Muschall, died. He helped to carry on the business for ten years thereafter. He and his wife together accumulated a considerable property as an outgrowth of the business. He takes and keeps his wife's property, claims one-half of the mortgages and the whole of the real property held by them in entirety and struggles now to avoid the payment of this legacy. The decision of the referee, confirmed by the Surrogate's Court, directing him to pay the legacy with interest from the death of his wife, when the children were entitled to receive the principal of the fund, is just and should be affirmed here.

We do not see how any rules of law stand in the way of granting this relief. It was the duty of the executor named in the will to set apart the amount of this legacy and keep it intact. This fund could not in whole or in part be paid or delivered to the widow. She was entitled only to the use or income thereof. There can be no doubt but that there was property sufficient then to provide for this fund, and still leave a large amount for the widow. If that executor had lived and had done his duty he would have kept this fund and had it intact when the widow died, and there would certainly be no doubt but that he or, if dead, his representatives would, at the death of the widow, have been obliged to pay the fund to the children or to a newly appointed personal representative of their father's estate. The widow having taken the place of the executor had the same duty imposed upon her, to keep this fund intact, and have it at her death so that the children could then have the benefit of it. There was property in her hands soon after her husband's death out of which she could have set aside this fund. If it turned out at her death that she had failed to do this, her estate was liable for the amount of the fund. If she did *set* the fund apart and had it intact at her death, then certainly her estate would be liable for it. So that in any event we can see no way of escape for her estate. It must respond for the amount of this legacy.

Up to the time of her death she had a right to use the income from the fund, but the moment she died the income as well as the

FOURTH DEPARTMENT, JANUARY, 1905. [Vol. 100.

principal belonged to the children, and if the principal was retained by the estate, and not paid over, the income was accumulating and the estate was liable for it. The interest was, therefore, properly allowed by the decree.

There were some exceptions taken to the admission and rejection of evidence, but none that require a reversal of the decree.

The decree or order should be affirmed, with costs.

All concurred.

Decree or order of the Surrogate's Court affirmed, with costs.